# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| OREN PROTER, Individually and On Behalf of All Others Similarly Situated<br>12 Hacharuv St.<br>Timrat, Israel 36576 | )<br>)<br>)<br>)    **Civil Action No.** |

OREN PROTER, Individually and On Behalf of
All Others Similarly Situated
12 Hacharuv St.
Timrat, Israel 36576

                                   Plaintiff,

           v.

**Civil Action No.**

**JURY TRIAL DEMANDED**

MEDIFAST, INC.
**Serve on**: Resident Agent:
Jaime Elwood
11445 Cronhill Drive
Owings Mills, Maryland 21117

BRADLEY T. MACDONALD
11445 Cronhill Drive
Owings Mills, Maryland 21117

MICHAEL S. MCDEVITT
11445 Cronhill Drive
Owings Mills, Maryland 21117

MARGARET E. MACDONALD-SHEETZ
11445 Cronhill Drive
Owings Mills, Maryland 21117

      and

BRENDAN N. CONNORS
11445 Cronhill Drive
Owings Mills, Maryland 21117

                          Defendants.

## CLASS ACTION COMPLAINT

Plaintiff Oren Proter ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Class Action Complaint against defendants, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by

and through his attorneys, which included, among other things: a review of the defendants' publicly available documents; conference calls and announcements made by defendants; Securities and Exchange Commission ("SEC") filings; wire and press releases published by and regarding Medifast, Inc. ("Medifast" or the "Company"); securities analysts' reports and advisories about the Company; and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of all persons or entities who purchased or otherwise acquired the securities of Medifast during the period from March 4, 2010 through and including March 10, 2011 (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). This class action is brought under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a); and SEC Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company was improperly recognizing certain expenses; (2) that the Company that the Company lacked adequate internal and financial controls; and (3) that, as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

3.      On March 11, 2011, the Company disclosed that it would be forced to delay filing its fiscal 2010 financial results and its Annual Report on Form 10-K. According to the limited

information provided by the Company regarding the delay, Medifast requires additional time to complete its year-end financial statements due to the need to review the recognition of certain expenses in prior periods.

4.      On this news, Medifast shares declined $5.27 per share, or more than 24%, to close on March 11, 2011, at $16.63 per share.

5.      As a result of defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).   Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

9.      In connection with the challenged conduct, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

10.     Plaintiff Oren Proter, as set forth in the accompanying certification, incorporated by reference herein, purchased Medifast securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

11.     Defendant Medifast is a Delaware corporation with its principal executive offices located at 11445 Cronhill Drive, Owings Mills, Maryland 21117.  Medifast combines physician-supervised weight loss programs with nutritional supplements and multidisciplinary patient education programs.   The Company provides an Internet-based physician and medical practitioner network to consumers.   Medifast also provides a corporate wellness program for large corporations, associations, and their health insurance carriers.   The aggregate number of shares of Medifast securities outstanding as of November 8, 2010 is approximately 15.4 million shares.   Medifast's common stock is listed on the New York Stock Exchange ("NYSE") under the ticker "MED."

12.     Defendant Bradley T. MacDonald ("MacDonald") has served as the Company's Executive Chairman of the Board of Directors since January 1998 and was also the Company's Chief Executive Officer until March of 2007.   Defendant MacDonald also founded the Company's subsidiary, Take Shape for Life, Inc. ("TSFL").   Defendant MacDonald is the father of Defendant Margaret E. MacDonald-Sheetz.

13.     Defendant Margaret E. MacDonald-Sheetz ("MacDonald-Sheetz") has served as the Company's President and Chief Operating Officer since March 2007 and as a director on the Company's Board since 2005 MacDonald-Sheetz joined Medifast in 2000 as the Director of Sales and Administration.   In 2002, she was promoted to VP of Operations and in 2004   to

Senior VP of Operations.    Defendant MacDonald-Sheetz is the daughter of Defendant MacDonald.

14.    Defendant Michael S. McDevitt ("McDevitt") has served as the Company's Chief Executive Officer and a director on the Company's Board since March of 2007. Defendant McDevitt joined Medifast in 2002 as the Controller and was promoted to Vice President of Finance in January 2004.   Between March of 2005 and March of 2007, Defendant McDevitt served as the Company's President.   Between January of 2006 and May 13, 2010, he served as the Company's Chief Financial Officer ("CFO").

15.    Defendant Brendan N. Connors ("Connors") has been the Company's CFO since May of 2010.  Defendant Connors joined Medifast as the VP of Finance in April 2005.

16.    The defendants referenced above in ¶¶ 12-15 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.    The Company's operations are primarily conducted through five of its wholly owned subsidiaries, Jason Pharmaceuticals, Inc., TSFL, Jason Enterprises, Inc., Jason Properties, LLC and Seven Crondall, LLC.   The Company's three primary distribution channels are TSFL, Direct Response, and Medifast Weight Control Centers.   The Company is engaged in the production, distribution, and sale of weight management and disease management products and other consumable health and diet products. Medifast, Inc.'s product lines include weight and disease management, meal replacement, and vitamins primarily manufactured in its FDA approved facility in Owings Mills, Maryland.

**Defendants' False and Misleading Statements**

18.     On March 4, 2010, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2009.  For the fourth quarter, the Company reported net income of $3 million, or $0.21 per diluted share and revenue of $46.2 million, as compared to net income of $949,000, or $0.07 per share and revenue of $25.5 million for the same period of the prior year.  For the year 2009, the Company reported net income of $12 million, or $0.81 per diluted share and revenue of $165.6 million, as compared to net income of $5.4 million, or $0.38 per diluted share and revenue of $105.4 million for the same period of the prior year.

19.     Regarding the results, Defendant McDevitt commented the following:

> As we indicated in our preliminary results release, we are extremely pleased that our multi-platform distribution business model continued to operate at a high level during the fourth quarter of 2009. The traditional holiday seasonality that is inherent to our calendar fourth quarter did not materialize this year and we benefitted with strong growth from all of our distribution channels. The credibility of the Medifast line of products and our weight loss program is enhanced by virtue of the recommendation of more than 20,000 doctors, and is a key factor to our success. In today's environment, we believe that the recommendations of friends and family as well as those in the medical profession transcend the mass market advertising paradigm as the most effective way to communicate the message and benefits of a weight loss program.

20.     On March 31, 2010, the Company filed its annual report on Form 10-K for the year ended December 31, 2009 with the SEC, which was signed by, among others, Defendants, and represented the Company's 2009 financial results and financial position.  In addition, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the Form 10-K contained signed certifications by McDevitt, stating that the financial information contained in the 10-K was accurate, and that any material changes to the Company's internal control over financial reporting were disclosed.

21.     On May 5, 2010, Medifast issued a press release announcing its financial results for the first quarter ended March 31, 2010.  The Company reported net income of $4.9 million, or $0.33 per diluted share and revenue of $60.6 million, as compared to net income of $2.5 million, or $0.17 per share and revenue of $34.6 million for the same period of the prior year.

22.     Regarding the results, Defendant McDevitt commented the following:

> We continue to experience very strong growth in each of our multi-platform distribution channels.  Increasingly the Take Shape for Life, Direct Response, and Medifast Weight Control Center channels are providing a complimentary source of support for health coaches and clients to connect and share Medifast's clinically proven weight-loss programs.  We will expand our platform by strategically investing in our infrastructure and enhancing our message to reach more consumers in both new and existing markets in the future.
>
> We believe our vertically integrated operations and increased capacity allow us to continually improve the long-term leverage of our business model by expanding our margins and long-term profitable growth.  We look forward to building upon the record achievements during the first quarter in 2010.

23.     On May 10, 2010, the Company filed a quarterly report on Form 10-Q for the first quarter ended March 31, 2010 with the SEC, which was signed by Defendant McDevitt, and represented the Company's quarterly financial results and financial position.   In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendant McDevitt, stating that the financial information contained in the 10-Q was accurate, and that any material changes to the Company's internal control over financial reporting were disclosed.

24.     On May 13, 2010, the Company announced that Defendant Connors was promoted to the position of CFO and Defendant McDevitt was no longer acting in that capacity.

25.     On August 5, 2010, Medifast issued a press release announcing its financial results for the second quarter ended June 30, 2010.  The Company reported net income of $5.6 million, or $0.38 per diluted share and revenue of $66.7 million, as compared to net income of

$3.0 million, or $0.20 per diluted share and revenue of $41.7 million for the same period of the prior year.

26.     Regarding these results, Defendant McDevitt commented the following:

> We are extremely pleased with Medifast's strong second quarter revenue and earnings performance. Our multi-platform distribution channels continue to provide a complementary source of support for Medifast direct response, weight loss clinics and health coaches to connect with clients in ways they prefer and share Medifast's clinically proven weight-loss programs.  We started the second half of the year with a 62% increase in attendance at the Take Shape for Life Annual Convention; and we believe this combined with the addition of at least 11 new Medifast Weight Control Centers, and a strong, efficient investment in Direct Response advertising provides strong momentum for the second half of 2010.
> Going forward, we are confident that our vertically integrated operations and increased capacity will allow us to continually improve the long-term leverage of our business model by expanding our margins and future long-term profitable growth.

27.     On August 09, 2010, the Company filed a quarterly report on Form 10-Q for the second quarter ended June 30, 2010 with the SEC, which was signed by Defendants McDevitt and Connors, and confirmed the Company's quarterly financial results and financial position.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants McDevitt and Connors, stating that the financial information contained in the 10-Q was accurate, and that any material changes to the Company's internal control over financial reporting were disclosed.

28.     On November 4, 2010, Medifast issued a press release announcing its financial results for the third quarter ended September 30, 2010.  The Company reported net income of $5.8 million, or $0.39 per diluted share and net revenue of $67.3 million for the third quarter 2009, compared to a net income of $3.4 million, or $0.23 per diluted share and net revenue of $46.1 million for the same period of the prior year.

29.     Regarding these results, Defendant McDevitt commented the following:

Our positive sales results were broad-based with each of our distribution channels growing at a rate of at least 30%. Increasingly, the Take Shape for Life, Direct Response, and Medifast Weight Control Center sales channels provide a complimentary source of personalized support for clients to connect and share Medifast's clinically proven weight-loss program. We are extremely pleased with our financial performance to date. Going forward, we are confident that our vertically integrated operations, combined with our recent investments in infrastructure and personnel will allow us to continually improve the leverage of our business model as we increase sales and expand margins for long-term profitable growth.

30.    On November 9, 2010, the Company filed with the SEC a quarterly report on Form 10-Q for the third quarter ended September 30, 2010, which was signed by Defendants McDevitt and Connors, and confirmed the Company's previously reported quarterly financial result.    In addition, pursuant to the SOX, the Form 10-Q contained signed certifications by Defendants McDevitt and Connors, stating that the financial information contained in the 10-Q was accurate, and that any material changes to the Company's internal control over financial reporting were disclosed.

31.    On September 3, 2010, the Company disclosed in a Form 8-K filed with the SEC that it had restated consolidated financial statements for 2006 through 2008 due to errors in deferred tax accounts. Specifically, the Company disclosed the following in relevant part:

(a) During the audit of the Company's financial statement for the year-ended December 31, 2009, Management of Medifast, Inc. was first advised by Friedman, LLP, the Company's independent registered public accounting firm, that a potential error existed in its deferred tax account balances due to timing differences resulting between depreciation expense for tax purposes versus financial statement purposes.

Management performed a detailed reconciliation of deferred tax accounts and the related provision for income taxes for all tax years beginning in 2001 in order to quantify the potential balance adjustments. The Company's Management upon being advised by its Independent Auditor of the SFAS No. 109 calculation issue, as part of its Sarbanes Oxley policy regarding internal controls regarding financial reporting, immediately reported this issue to the Audit Committee which promptly

initiated and conducted its review. That review on March 16, 2010 concluded i) that Bagell, Josephs, Levine & Company, LLP ("BJL") had merged with Friedman, LLP effective January 1, 2010. ii) that neither Management nor the Audit Committee had been previously notified of this audit concern by its auditors BJL either during those audits nor while preparing the quarterly reports and tax returns with BJL Tax Accountant Services for the pertinent years iii.) that Company management is responsible for the internal controls over the preparation and review process for the calculation of the income tax provision which was inadequate, and led to errors in the computation of deferred tax assets, deferred tax liabilities, and related income tax provision.

On March 29, 2010 management and the Audit Committee reviewed management's findings as well as the finding of Friedman, LLP and the Audit Committee concluded that restating the consolidated financial statements for the years ended December 31, 2006, 2007, and 2008 is required. The Company announces that its consolidated financial statements for the years ended December 31, 2006, 2007 and 2008 issued prior to the filing of its Annual Report on Form 10-K on March 31, 2010, should not be relied upon henceforward.

The Company is restating for errors identified in its deferred tax accounts pertaining to (i) differences between the income tax basis and the financial reporting basis of long-lived assets that were not reconciled to the deferred tax balances (ii) to properly apply a net operating loss to our deferred tax and provision for income taxes for the years ended December 31, 2001, 2002, 2003, 2004, and 2005. The effects of these restatements are included in the Annual Report on Form 10-K for the fiscal year ended December 31, 2009 filed on March 31, 2010 with the Securities and Exchange Commission. The Annual Report on Form 10-K filed on March 31, 2010 also includes management's conclusion that a material weakness existed in our internal control over financial reporting as of December 31, 2009. The preparation and review process for the calculation of the tax provision was inadequate, which led to errors in the computation of deferred tax assets, deferred tax liabilities, and related income tax provision.

The correction of the errors noted in (i) above reduced 2008, 2007, and 2006 net income by $601,000 (.04 per diluted share), $411,000 ($.03 per diluted share), and $583,000 (.04 per diluted share), respectively. The corrections noted in number (ii) above increased beginning of 2006 accumulated deficit by $1,358,000.

32.    The statements referenced above in ¶¶ 18 - 23; 25 - 31 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse

facts, which were known to defendants or recklessly disregarded by them that: (1) that the Company was improperly recognizing certain expenses; (2) that the Company lacked adequate internal and financial controls; and (3) that, as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

**The Truth Emerges**

33.     On March 11, 2011, the Company disclosed that it will require additional time to review its year-end financial statements.  Specifically, the "delay in releasing is due to additional time needed for the Company to review the recognition of certain expenses in prior periods, and therefore complete its consolidated financial statements for fiscal 2010 and its Annual Report on Form 10-K."

34.     On this news, Medifast shares plummeted $5.27 per share, or more than 24%, to close at $16.63 per share, on unusually high volume.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf a Class of all persons who purchased or acquired Medifast securities during the Class Period (the "Class").  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Medifast securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Medifast or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;
- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Medifast;
- whether the Individual Defendants caused Medifast to issue false and misleading financial statements during the Class Period;
- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Medifast securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

41.  Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Medifast securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Medifast securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.  Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## CLAIMS FOR RELIEF

### COUNT I

**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

43.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.  This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Medifast securities; and (iii) cause Plaintiff and other members of the Class to purchase Medifast securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

46.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Medifast securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Medifast's finances and business prospects.

47.     By virtue of their positions at Medifast, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Medifast securities from their personal portfolios.

49.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Medifast, the Individual Defendants had knowledge of the details of Medifast internal affairs.

50.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Medifast. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Medifast's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Medifast securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Medifast's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Medifast securities at artificially inflated prices and relied upon the price of the securities, the integrity of

the market for the securities, and/or upon statements disseminated by defendants and were damaged thereby.

51.     During the Class Period, Medifast securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Medifast securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of Medifast securities were substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Medifast securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the
Exchange Act Against The Individual Defendants)**

54.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.    (a)    During the Class Period, the Individual Defendants participated in the operation and management of Medifast, and conducted and participated, directly and indirectly, in the conduct of Medifast's business affairs.  Because of their senior positions, they knew the adverse non-public information about Medifast's misstatement of income and expenses and false financial statements.

(b)    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Medifast's financial condition and results of operations, and to promptly correct any public statements issued by Medifast which had become materially false or misleading.

(c)    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Medifast disseminated in the marketplace during the Class Period concerning Medifast's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Medifast to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of Medifast within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Medifast securities.

56.    Each of the Individual Defendants, therefore, acted as a controlling person of Medifast.  By reason of their senior management positions and/or being directors of Medifast, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause Medifast to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Medifast and possessed

the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Medifast.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Awarding compensatory damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs;

D.    Awarding rescissionary damages; and

E.    Awarding such equitable, injunctive or other relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

trial by jury of all issues that may be so tried.

Dated:  March 17, 2011

Respectfully submitted,

John B. Isbister, Federal Bar No. 00639
Daniel S. Katz, Federal Bar No. 01148
Tydings & Rosenberg LLP
100 E. Pratt Street, 26th Floor
Baltimore, Maryland 21202
Telephone:  (410) 752-9700
Facsimile:  (410) 752-5460

OF COUNSEL:

**POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP**
Marc I. Gross
Jeremy A. Lieberman
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: 212-661-1100
Facsimile:  212-661-8665

**POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom
pdahlstrom@pomlaw.com
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Phone: 312-377-1181
Fax: 312-377-1184

### Certification of Plaintiff
### Pursuant to Federal Securities Laws

1.   I, Oren Proter, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.   I have reviewed a Complaint against Medifast, Inc. ("MED"), and authorize a filing of a comparable complaint on my behalf.

3.   I did not purchase my MED securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.   I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action and that the Counsel will exercise its discretion in determining whether to move on my behalf for appointment as lead plaintiff.

5.   To the best of my current knowledge, the attached sheet lists all of my purchases and sales in MED securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.   The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed ___Murch 16th 2011___, at ___TIMRAT, ISRAEL___
           **(Date)**                        **(City, State)**

_____
                          **(Signature)**

___OREN PROTER___
**(Type or Print Name)**

**Summary of Purchases and Sales**

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|---|---|---|---|
| 3/2/2011 | PURCHASE | 215 Stock | $5,000 |
| 3/2/2011 | PURCHASE | 221 Stock | $5,000 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |