# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| OREN PROTER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11 cv 00720 (BEL) |
| MEDIFAST, INC., BRADLEY T. MACDONALD, MICHAEL S. MCDEVITT, MARGARET E. MACDONALD-SHEETZ and BRENDAN N. CONNORS | ) ) ) ) ) ) | ECF Case |
| Defendants. | ) ) | |
| FRED GREENBERG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 11 cv 00776 (BEL) |
| MEDIFAST, INC., BRADLEY T. MACDONALD, MICHAEL S. MCDEVITT, MARGARET E. MACDONALD-SHEETZ and BRENDAN N. CONNORS | ) ) ) ) ) | ECF Case |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL OF MOVANT, CHRISTOPHER BELL

## I.      INTRODUCTION

Christopher Bell ("Movant" or "Bell") respectfully submits this Memorandum of Law in

support of his Motion for (1) consolidation of the above-captioned actions, (2) appointment as

Lead Plaintiff and (3) for approval of his selection of Lead and Liaison Counsel.  With estimated

losses in excess of $11,000 arising from his purchase of the common stock of Medifast, Inc.

("Medifast" or the "Company") between March 4, 2010 and March 10, 2011 (the "Class

Period"), Bell has the "largest financial interest" in this putative class action, and otherwise

meets the requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C.

§78u-4, *et seq.*

As demonstrated below and pursuant to the PSLRA, Movant is the "most adequate"

plaintiff to represent those who purchased or otherwise acquired Medifast's securities during the

Class Period and he should be appointed as Lead Plaintiff.  In addition, Movant has selected and

retained Shepherd Finkelman Miller & Shah, LLP ("SFMS"), a law firm with extensive

experience in prosecuting securities fraud and other complex litigation matters to serve as Lead

Counsel.  Further, Bell has selected Kramon & Graham, P.A. ("Kramon & Graham"), a law firm

with experience in securities litigation and extensive experience in other complex litigation

matters to serve as Liaison Counsel.  Accordingly, Bell's selection of counsel should be

approved.

## II.   SUMMARY OF ALLEGATIONS[1]

Presently pending before the Court are two related securities class action lawsuits (the

"Actions") brought on behalf of those persons or entities that purchased or otherwise acquired

the common stock of Medifast during the Class Period.  Both Actions allege violations of

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15

---

[1]These facts are based upon the first-filed complaint, *Oren Proter v. Medifast, Inc., et al.*, No. 11-cv-00720 (D. Md.), filed on March 17, 2011 (the "Complaint").

U.S.C. §§ 78(j)(b) and 78t(a)) against Defendant Medifast, as well as the following individuals,

who occupied senior management positions during the Class Period:  Defendant, Michael S.

McDevitt ("McDevitt"), the Company's Chief Executive Officer; Defendant, Bradley T.

MacDonald ("MacDonald"), who has served as the Company's Executive Chairman of the Board

of Directors and was also the Company's Chief Executive Officer until March of 2007;

Defendant, Brendan N. Connors ("Connors"), who was the Company's Chief Financial Officer;

and Defendant, Margaret M. MacDonald-Sheetz ("Sheetz"), who has served as the Company's

President and Chief Operations Officer since 2007 and as a director on the Company's Board

since 2008 (collectively, "Defendants").

Medifast, a Delaware corporation with its principal executive offices located in Owings

Mills, Maryland, engages in the production, distribution, and sale of weight management and

disease management products and other consumable health and diet products.  Complaint, ¶17.

On March 4, 2010, Medifast announced its financial results for the fourth quarter and year ended

December 31, 2009.  Complaint, ¶18.  Medifast reported net income of $12 million, in

comparison to $5.4 million for the same period of the prior year.  *Id.*  In response, McDevitt

commented that, "we are extremely pleased that our multi-platform distribution business model

continued to operate at a high level during the fourth quarter of 2009....The traditional holiday

seasonality that is inherent to our calendar fourth quarter did not materialize this year and we

benefitted with strong growth from all of our distribution channels."  *Id.*, ¶19.

On May 5, 2010, Medifast announced its financial results for the first quarter ended

March 31, 2010, reporting an increase in net income.  *Id.*, ¶21.  McDevitt positively commented

on the Company's strong growth in each of their multi-platform distribution channels and

indicated that the Company would expand its platform by investing in its infrastructure and attempting to reach new customers. *Id.*, ¶22. Shortly thereafter, on May 13, 2010, the Company announced that McDevitt would no longer be acting as CFO and the Connors would be taking his place. *See id.*, ¶24.

On August 5, 2010, the Company announced its financial results for the second quarter ended June 30, 2010, reporting a net income of $5.6 million, as compared to net income of $3 million for the same period of the prior year. *Id.*, ¶25. McDevitt again favorably commented on the Company's earnings performance. *Id.*, ¶26. For example, McDevitt stated, "We started the second half of the year with a 62% increase in attendance at the Take Shape for Life Annual Convention; and we believe this combined with the addition of at least 11 new Medifast Weight Control Centers, and a strong, efficient investment in Direct Response advertising provides strong momentum for the second half of 2010." *Id.*

Medifast again announced financial results through a press release dated November 4, 2010, wherein the Company reported net income of $5.8 million, compared to a net income of $3.4 million for the same period of the prior year. *Id.*, ¶28. McDevitt again commented favorably on the results, stating, among other things, that "[o]ur positive sales results were broad-based with each of our distribution channels growing at a rate of at least 30%. Increasingly, the Take Shape for Life, Direct Response, and Medifast Weight Control Center sales channels provide a complimentary source of personalized support for clients to connect and share Medifast's clinically proven weight-loss program." *Id.*, ¶29.

On September 3, 2010, Medifast disclosed that, based on its Audit Committee's recommendations, it had restated consolidated financial statements for 2006-2008 due to errors

in deferred tax accounts. *Id.*, ¶31. This correction significantly reduced the net income reported by the Company for those years. *Id.* Then, on March 11, 2011, Medifast stated that it would need to delay filing its financial results and its Annual Report on Form 10-K for fiscal 2010 in order to complete its year-end financial statements due to the need to review the recognition of certain expenses reported in prior periods. *See id.*, ¶¶3, 33.

The Complaint alleges that Defendants' Class Period statements were false and/or misleading and/or failed to disclose that, *inter alia*, the Company was improperly recognizing certain expenses; that the Company lacked adequate internal and financial controls; and that, as a result of the foregoing, the Company's financial results were materially false and misleading. Complaint, ¶¶2, 32. Defendants' false and misleading statements and/or omissions had the effect of causing Medifast's shares to trade at artificially inflated prices during the Class Period. When the truth came out concerning Medifast's true financial condition, the Company's stock plummeted by almost 24%, or $5.27 per share, to close at $16.63 per share on extremely high volume. *See id.*, ¶34.

## III.   ARGUMENT

### A.   The Actions Should Be Consolidated For All Purposes

Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42(a); *see In re MicroStrategy Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000), *citing Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)(noting that consolidation of actions is often appropriate in the case of multiple securities fraud actions that are based on the same public statements and reports). The Actions pending before the Court each assert class claims for violation of the Exchange Act on behalf of those who purchased or

otherwise acquired Medifast securities during the Class Period.  The Actions name the same

Defendants (the Company, McDevitt, MacDonald, Connors and Sheetz) and involve the same

factual and legal issues – namely, whether Plaintiff purchased or otherwise acquired Medifast

publicly traded securities at prices which were artificially inflated as a result of Defendants' false

and misleading statements and/or omissions, and whether Defendants' acts violate Sections 10(b)

and 20(a) of the Exchange Act.  Accordingly, consolidation is appropriate here.  Moreover,

consolidation will result in substantial efficiencies for the Court and the parties.  Therefore, the

above-captioned actions should be consolidated for all purposes.

> **B.     Movant Is The Most Adequate Applicant And Should Be Appointed Lead Plaintiff**
>
> **1.     Compliance With The Notice And Filing Provisions Of The PSLRA**

The PSLRA establishes a procedure that governs the appointment of a lead plaintiff in

"each private action arising under [the Exchange Act] that is brought as a plaintiff class action

pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) and (a)(3)(B)(I).  *See*

*generally In re Royal Ahold N.V. Securities and ERISA Litigation,* 219 F.R.D. 343, 348 (D. Md.

2003) (discussing the PSLRA's "three-step process for identifying the lead plaintiff").  Pursuant

to this procedure, the plaintiff who files the initial action must publish a notice to the class within

twenty (20) days of filing the action.  This notice must inform class members of their right to file

a motion for appointment as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(A)(I).  Within sixty (60)

days of publishing the notice, any person or group of persons who are members of the proposed

class may apply to the court to be appointed as lead plaintiff, whether or not they have previously

filed a complaint in the action.  *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Here, notice of the filing of this action was published on March 18, 2011, following the filing of the Complaint. *See* Exhibit "A" to the Declaration of Aron U. Raskas ("Raskas Dec.") submitted herewith.[2] Accordingly, the time period in which Class members may move to be appointed Lead Plaintiff in this case expires on May 17, 2011. *See* 15 U.S.C. §78u- 4(a)(3)(A) and (B). Movant now timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the proposed Class.

Bell's Certification, which is attached to the Raskas Dec. as Exhibit "B," states that he has reviewed the allegations of the Complaint and is willing to serve as a representative on behalf of the Class. In addition, Movant has selected and retained competent counsel to represent him and the Class. The firm resume for SFMS is attached as Exhibit "D" to the Raskas Dec. *See also*, *infra* p. 11. Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have his Motion for Appointment as Lead Plaintiff granted, and his selection of SFMS as Lead Counsel and Kramon & Graham as Liaison Counsel approved by the Court.

## 2.   Bell Suffered The Largest Loss Of Any Other Movant

The PSLRA provides that the Court shall consider any timely motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

---

[2]The notice was issued over *Globe Newswire*, which meets the PSLRA's definition of a "widely-circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(I). *See, e.g., Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 531 (N.D. Cal. 2009) (publication through *Globe Newswire* met the statutory standard).

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that
>
> > (aa) has either filed the complaint or made a motion in response to a notice...;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. at 348.

During the Class Period, Bell purchased Medifast common stock and suffered significant losses.  Specifically, as reflected in his Certification (Exhibit "B" to the Raskas Dec.), Bell purchased a total of 1,800 shares of the Company's common stock during the Class Period and, after subtracting for the value of shares retained, Movant has suffered estimated losses in excess of $11,000,[3] which demonstrates Bell's financial interest in the outcome of this action.  To the best of Movant's knowledge, there are no other applicants seeking appointment as lead plaintiff that have a larger financial interest.  Therefore, Bell satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. §78u-4 (a)(3)(B).

---

[3]Under the PSLRA, losses are calculated as the difference between the purchase or sale price paid and the mean trading price over a ninety (90) day period beginning after the close of the class period.  *See* 15 U.S.C. § 78u-4(e)(1).  Here, the ninety (90) day period following the close of the Class Period, which ended on March 10, 2011, has not expired.  The mean or average closing price for Medifast common stock from March 11, 2011 through May 16, 2011 is $18.96 per share.  A chart reflecting the calculation of Bell's losses based on this mean closing price is attached as Exhibit "C" to the Raskas Dec.

### 3.      No Grounds Exist To Challenge Bell's Adequacy As Lead Plaintiff

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  However, "[a] wide-ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for. . . consideration of a motion for class certification."  *In re USEC Sec. Litig.*, 168 F.Supp.2d 560, 566 (D. Md. 2001) (citing *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998)).   Further, only a preliminary showing of typicality and adequacy is required at this stage of the litigation.  *Zaltzman, et al., v. Manugistics Group, Inc., et al.,* Civil Action No. 98-1881, 1998 U.S. Dist. LEXIS 22867, at *20 (D. Md. 1998) (citing *Gluck v. Cellstar Corporation*, 976 F. Supp. 542 at 546 (N.D. Tex. 1997)).  Movant should be appointed Lead Plaintiff because he satisfies the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), typicality is satisfied "if the movant's claim arises from the same course of events. . . and relies on similar legal theories."  *Royal Ahold,* 219 F.R.D. at 350.  Here, Bell satisfies this requirement because, just like all other Class members, Movant purchased or otherwise acquired Medifast common stock during the Class Period; the prices at which those purchases were made were artificially inflated because of Defendants' materially false and misleading statements and/or omissions; and he suffered damages as a result of Defendants' conduct.  Thus, Movant's claims arise out of the same course of events as those of other Class members and are typical.

Under Rule 23(a)(4), courts must "look to such factors as whether the representatives'

interests are sufficiently identical to those of the absent class members so that they will diligently and vigorously pursue the claims of all of the members of the class; whether the representatives' counsel is competent to conduct the litigation; and whether there is an antagonism of interest between the named plaintiff and members of the class." *Zaltzman, et al., v. Manugistics Group, Inc., et al.,* Civil Action No. 98-1881, 1998 U.S. Dist. LEXIS 22867, at *21 (D. Md. 1998) (citing *Smith v. Montgomery County*, 573 F.Supp. 604, 612-13 (D. Md. 1983)).

Here, Bell is an adequate representative of the Class. Bell works for a full service IT company selling and managing computer networks for other companies. Bell's substantial damages as a result of his purchases of Medifast common stock ensures that Movant will be motivated to vigorously prosecute this case on behalf of the Class. Further, there is no evidence of any antagonism between Bell and the Class. In addition, as shown below, Movant's proposed Lead and Liaison Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movant satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this Motion.

## C.    The Court Should Approve Movant's Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), Movant shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. *See Klugmann, et al. v. American Capital Ltd., et al.,* No. PJM 09-5, 2009 WL 2499521, at *6 (D. Md. Aug. 13, 2009). Bell has selected SFMS to serve as Lead Counsel and Kramon & Graham to serve as Liaison Counsel in this case. SFMS and Kramon & Graham have substantial experience in the prosecution of shareholder, securities and other complex litigation, and have the resources necessary to efficiently conduct this litigation. SFMS concentrates its' practice on complex litigation with a

particular emphasis on securities litigation.  SFMS has been appointed lead counsel in securities

class action litigation.  *See, e.g., In re Faro Technologies, Inc. Securities Litigation,* Civil Action

No. 06-0057 (M.D. Fla.); *Elan Corporation Securities Litigation*, Civil Action No. 11-01232

(S.D.N.Y.); and s*ee also* Exhibit "D" to the Raskas Dec. (firm resume of SFMS).   The lawyers of

Kramon & Graham are experienced trial lawyers and include principals who are former Assistant

United States Attorneys and Assistant Attorneys General.   With respect to securities litigation,

Kramon & Graham is experienced in direct and derivative class actions, SEC and other

regulatory proceedings.   Kramon & Graham also has extensive experience in other complex

litigation.[4]  Accordingly, the Court should approve Bell's selection of Lead and Liaison Counsel.

**IV.**     **CONCLUSION**

For all of the foregoing reasons, Movant respectfully requests that the Court: (i)

consolidate the Actions: (ii) appoint Bell as Lead Plaintiff in this consolidated action; and (iii)

approve the Movant's selection of Shepherd, Finkelman, Miller & Shah, LLP to serve as Lead

Counsel and Kramon & Graham, P.A. to serve as Liaison Counsel.

---

[4]Kramon & Graham has been involved in the following class action and other complex cases:  *In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation* (Civil Action No. 08-md-01982, D. Md.); *Johnson v. Midland Funding* (Civil Action No. 09-02391, D. Md.); *Bayshore Ford Truck, et al. v. Ford Motor Company,*  (Civil Action No. 99-741, D. NJ)*; Bund zur Unterstutzung Radargeschadigter v. Raytheon Company, et al.,* (Civil Action No. 03-0008, W.D. Tex.); *and In re American Honda Company Dealerships Relations Litigation* (Civil Action No. MDL 95-1069, D. Md.)*.*

Dated: May 17, 2011                    Respectfully submitted,


                                       KRAMON & GRAHAM, P.A.

                                       /s/ Aron U. Raskas
                                       James P. Ulwick, Federal Bar No. 00536
                                       Aron U. Raskas, Federal Bar No. 04393
                                       KRAMON & GRAHAM, P.A.
                                       One South Street, Suite 2600
                                       Baltimore, MD 21202-3201
                                       Telephone: (410) 752-6030
                                       Facsimile: (410) 539-1269
                                       Email: julwick@kg-law.com
                                              araskas@kg-law.com

                                       SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
                                       James E. Miller
                                       Patrick A. Klingman
                                       Karen Leser-Grenon
                                       65 Main Street
                                       Chester, CT 06412
                                       Telephone: (860) 526-1100
                                       Facsimile: (860) 526-1120
                                       Email: jmiller@sfmslaw.com
                                              pklingman@sfmslaw.com
                                              kleser@sfmslaw.com


                                       Scott R. Shepherd
                                       James C. Shah
                                       SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
                                       35 East State St.
                                       Media, PA 19063
                                       (610) 891-9880
                                       (610) 891-9883 (facsimile)
                                       Email: sshepherd@sfmslaw.com
                                              jshah@sfmslaw.com

                                       **Attorneys for Movant,**
                                       **Christopher Bell**